Good morning, Your Honor. May it please the Court, my name is Rufus Myers. I'm Counsel for the Appellant, Federal Home Loan Mortgage Corporation, also known as... Could you stop? Oh, sorry, go ahead. Also known as Freddie Mac. And this time I would like to reserve five minutes for a rebuttal. Your Honors, the District Court erred on three issues from which Freddie Mac has appealed. Could you talk to me a little about timeliness of the appeal before we get to that? Yes, Your Honor. The way I remember the form in the Federal Rules of Civil Procedure, you know those forms at the back of it? Yes, Your Honor. When I was a district judge, I just copied the forms. And you would issue a judgment, a Rule 58 separate piece of paper judgment. And it would have blanks for the attorney's fees award and the costs. And then later on, after the judge made the decision on attorney's fees and the clerk taxed costs, the clerk would fill in those two numbers. But the appeal time ran from when that judgment was issued. And I always thought that if a person didn't appeal that judgment but waited until the numbers were filled in, all they could appeal was the attorney's fees and costs award. And it looks to me like this case is the same as that, even though the form is slightly different. Instead of filling in blanks, a new judgment was issued that was different only with respect to the attorney's fees and costs. Have I got the facts right? And if I do, why isn't that analysis right? I'm not certain I'm clearing your fence, Your Honor. But was there anything? Your appeal was timely from the second judgment, but not the first. Isn't that right? Our appeal was timely from the judgment that was entered on July the 30th, which we deem to be the final judgment entered in this case primarily. What about the May 13 judgment? The May 13 judgment, Your Honor, we do not believe was final because it did not resolve two issues that were part of the merits in the case. Anything? I thought attorney's fees and costs were not merits of the case, just collateral. Under the Budenich rule, Your Honor, Budenich decided that the attorney fees solely were not merits of the case. But in this particular case, there was something other than the attorney fees that were at issue. At issue in this particular case was the court's ruling on Freddie Mac's defense based on paragraph 24 of the contract. Paragraph 24 of the contract stated, I quote, the acceptance of a deed by the purchaser shall be deemed to be a full performance and discharge of every agreement and obligation on the part of the seller. That was resolved May 13th, wasn't it? No, Your Honor. The court never did resolve that on May 13th. In fact, the court did not rule on that issue until they issued the July 30th order. In fact, the court made a finding of fact when it ruled on the summary judgment motions that that particular clause was contained in the contract. But in deciding the motion for summary judgment, the court did not rule on whether or not that paragraph absorbed Freddie Mac from liability. Freddie Mac then raised that argument during the pretrial conference, and the court scheduled that as one of the issues to be decided on the merits at the trial on damages. The court still did not issue an order with respect to that particular defense until the court entered its order dated July 30th, 2003. But Your Honor, the first issue is a jurisdictional issue in which Freddie Mac has appealed from all of the merits issues, all the merits rulings entered below. Appellees incorrectly assert that the appeal was untimely because we did not appeal within 30 days of the May 13th order that you mentioned that the district court had labeled as a final judgment. But that judgment wasn't final for several reasons. Indeed, we appealed from the district court's order dated July 30th, 2003, which decided the attorney fees and the impact of paragraph 24 of the contract on the court's liability rulings. On this merger issue, was the decision that the judge made in July with regard to merger into the deed solely with respect to attorney's fees? The court... That's what I thought it was. It was solely attributable to attorney fees based on the court's order, Your Honor. So what you had was you had an agreement between the parties that said American rule doesn't apply, English rule applies whenever it's attorney's fees. And that you had a defense to attorney's fees, this merger, and the judge says no dice, attorney's fees are awarded. Yes, but it was much broader than that, Your Honor, because that defense was raised in respect to all of their claims for damages. So, if the court, when the court ruled that that only applied to attorney fees, we interpreted that rule to mean that it also applied to their other causes of action. Because if the court had agreed with Freddie Mac, that paragraph 24 meant what we said that it meant, which was that once the morals accepted the deed to the property, that they no longer had any other causes of action against Freddie Mac based on the party's contract, then that ruling would have negated every ruling that the court had issued with respect to Freddie Mac's liability and with respect to the damages that the court awarded the morals. So it went beyond the issue of attorney fees. And it wasn't until the July 23rd order, excuse me, the July 30th order that the court even addressed that particular defense. The other point I would like to make on that is that we raised that defense, again, during our pre-trial conference, and the court scheduled that as an issue to be determined at trial along with the attorney fees. That is significant because the morals, along with Freddie Mac, agreed that the attorney fee issue, as well as our defense based on paragraph 24 of the contract, would be decided as part of the merits of the case during the trial. However, the court did not decide that issue during the trial. Subsequently, after the trial had concluded, the morals filed a motion for attorney fees, and again, we raised that particular defense. And it wasn't until the court issued its ruling on July the 30th that the court concluded that the paragraph 24 defense was rejected. And therefore, based on that rejection, our interpretation was that the court finally resolved the merit issue that it had agreed to resolve during the pre-trial conference and that the parties expected the court to resolve as part of the merits in the case. The other issue that makes the July 30th order final yarner was that until the court issued that order, the last claim for contract damage. I don't have the judge's July order in front of me, and does it say anything other than that it's rejecting your merger argument on attorney's fees? Does it say it's talking about anything broader than attorney's fees? It does not say that it's talking about anything broader than attorney fees, your honor. The other reason, your honor, why the July 30th order was the final order for purposes of 28 U.S.C. 1291 is that the damages that were being sought were contract damages. Those contract damages were attorney fees that were embedded in the morals contract with Freddie Mac. Under the Clark case, which is cited in our brief and which is factually similar to the case, the Sixth Circuit Court of Appeals held that the attorney fee issue had to be resolved before the case was right for appeal for four reasons that also apply in this particular case. One is that there was an unresolved issue for contract damages, and those claims were for attorney fees. Two, the Sixth Circuit Court held that if the court did not resolve all the claims, then it was required to specifically determine that there was no just reason for delay and direct that judgment be entered. Is that the Clark case? Yes, it is, your honor. That's not precedential in the Sixth Circuit, is it? It's not. I'm sorry? I mean, of course it isn't precedential here, but even in the Sixth Circuit, wasn't it an unpublished opinion? It was unpublished, yes, your honor. How come you're citing an unpublished opinion from another circuit to us as something we ought to follow? Well, we think that the reasoning and rationale in that particular case is very pertinent to the case. You can just plagiarize it. It's perfectly legal. You can give the reasoning, but it has no authority. Well, we cite it for the reasoning that is cited in that particular case, your honor. In particular, given the facts of the Clark case are very similar to the facts in this particular case. And we think that when the court went through the analysis. When you say the facts are similar to this case, the only relevance to that is for stare decisis. In other words, using it as precedent. It doesn't tell me anything about the reasoning having any force. A really bad decision that our court has made in the past binds us. We don't care about its reasoning. Stare decisis requires us to follow it. And it seems to me that that's what you're telling us about the Sixth Circuit case, but it has no application. Unpublished Sixth Circuit case. Well, so I don't actually see what is persuasive about the reasoning. Okay, your honor. Again, we cited it for the proposition that we thought it was well reasoned to where the court articulated why. What is the reasoning that's well? The reasoning that was well is that. What's the good reasoning? Is that the attorney fees in that particular case were a part of the merits for several reasons. And one of the reasons that it was part of the merits was that the court ordered, as part of the pretrial order, that it would consider it as part of the merits. And that is a fact that is very similar to this particular case, your honor. When we raised that particular defense during the pretrial conference, the court said that it would set it down for consideration, along with the other merit issues that would be determined at trial on damages. Mr. Myers, I do want to make it clear that in asking you about the status of that Sixth Circuit opinion, I simply was inquiring whether I was right in thinking that within the Sixth Circuit, it was not a case that represented the circuit-wide determination of the rule. It was a ruling by a particular panel, and it may or may not have some persuasive value elsewhere. Obviously, with respect to the Ninth Circuit, it has no presidential value at all, although conceivably, if its logic were well stated, it might be viewed as being persuasive, or it might not. But the Ninth Circuit's jurisprudence, of course, if it's inconsistent with it, then whatever the Sixth Circuit said, whether presidential or otherwise, would be of no impact here. I don't know what the rules of the Sixth Circuit are about the publication of the uses of unpublished opinions, I would guess that in the Sixth Circuit you wouldn't probably get a warm reception from the Court of Appeals if you said, by the way, there's an unpublished opinion which you ought to follow. But maybe as far as the Ninth Circuit is concerned, I suppose one can cite opinions from any other circuit or district judge anywhere. The Ninth Circuit may regard that as persuasive or not, but it depends, as I think Judge Kleinfeld has said, on the strength of the opinion, not any intrinsic authority that it has, because it's a circuit panel. Your point is well taken, Your Honor. To conclude our point on why this particular case is outside of the lineage in other cases, the important fact for the Court to realize here is that the court, the district court, had to make a ruling on Freddie Mac's defense with respect to paragraph 24 of the contract. And our position is that if the court had adopted our view of paragraph 24, it would have negated every order that the court had entered previously in the case with respect to Freddie Mac's liability and with respect to the damages. Therefore, on that basis, those previously entered orders were not final for purposes of appeal. What was your paragraph 24 argument? I beg your pardon? What was your paragraph 24 argument? The paragraph 24 argument was that once the Morros accepted the deed to the property, then they no longer had any claims or causes of action against Freddie Mac based on the party's contract. And when was the first time you made that argument to the court? That argument was made during the pretrial conference as a defense to their claim for damages. And that argument was advanced prior to the court's first decision. Is that right? Prior to the May 13th decision? Yes, Your Honor. So that had been addressed. No, no. I'm sorry. I'm sorry. We made that argument prior to the May 13th decision, but the court did not address that issue in the May 13th decision. You mean they didn't talk about it? Didn't talk about it, but they must have addressed it or else you would have won, right? Well, they didn't specifically rule on our defense. But if your defense was good, you would win. Didn't it raise judicata that even though the judge didn't talk about it, that that defense has been rejected? Your Honor? If the judgment becomes final through appeal. You used the defense, it didn't work, you lost. Our position, and I understand what the court is saying, our position is that the court did not specifically rule on that particular defense in any of the orders. I don't understand what you mean by specifically. I mean, you said this is the defense. It didn't work. Implicitly, the court must have rejected the defense. Well, there may be an argument that the court may implicitly have rejected that defense. Actually, we just talk about the things that we find interesting, difficult, and significant, and then there's a whole lot of other stuff that just seems like chaff. And sometimes we have a catch-all sentence saying all the other arguments are rejected, and sometimes we don't. But there's always something we don't address, some citation, some argument, something. Right. I understand, Your Honor. Our position is that we expected the court to address that issue, and that the court, in fact, did address that issue, but it did not address the issue until the July 30th order. And that if, in fact, the court had ruled in the July 30th order that that particular defense did apply, then that particular ruling would have negated every other ruling. And so the distinction that Freddie Mac draws here is that because that determinative issue had not been decided by the court until the 30th, then that constituted a part of the merits of the case. So why did you file a motion for reconsideration and say, wait a minute, you didn't address our defense? No, Your Honor, we didn't. We opposed the attorney fee motion and we raised the same defense, and our position was that the court ultimately did reach that issue. And so, therefore, there was not a need for a motion for reconsideration. I guess what I'm puzzled by, given that you weren't filing a motion for reconsideration, I guess what I'm puzzled by is whether it wouldn't have been prudent to file a notice of appeal from the May 13th judgment, even though you were doubtful that it really was the final appealable order. I mean, the worst thing that could have happened was that this court would have said, you're too early. But as it was, it seems to me there was considerable risk in waiting around as your client did before waiting for the July court. You're correct, Your Honor, that it wasn't the most prudent action to take by not filing the protective notice of appeal. But again, under 28 U.S.C. 1291, our position is that the merits issues have to be resolved before the final judgment becomes final. And in that particular case, our position is that because the court made a merit decision based on our defense to all of the claims under the contract, then it was not final. Finally, Your Honor, I would like to wrap up with at least one other point with respect to an issue on appeal, and that has to do with the court's ruling that the blanket disclaimer in the addendum did not negate the moral's attempt to have Freddie Mac represent that the property was connected to a public sewer. That particular argument is discussed in our brief. I'm running low on time. I would like to save the last minute for rebuttal, but I did want to bring to the court's attention that that is one of the second of three issues that we have appealed before the court today. Thank you, Counsel. Good morning. May it please the court. My name is Andrew Cole, and I represent the appellees in this matter, Jeremy and Sarah Morrow. I'd like to address the jurisdictional issue and the propriety of the notice of appeal and then move, if the court is interested and as necessary, to the propriety of the court's underlying determination on summary judgment and then the trial on damages. Could you talk louder? I'm having a strain to hear you. Yes, Your Honor. I'm sorry. I'd like to speak to the appeal issue and then speak to the summary judgment issue on liability and the trial on damages and entertain any questions from the court on those issues. It's significant to remember in this case that the parties filed cross motions for summary judgment that were decided first. Merger would have been an argument that should have and was properly raised in that initial proceeding on liability if, as Freddie Mac now claims, that formed some sort of contractual bar to them. The case went off on summary judgment? Correct. And whatever arguments they had for defenses, they were free to present them then? That's correct. Did they present the merger argument then? I don't remember. They did not. And it's an affirmative defense that needs to be pled and asserted in that case. They pleaded. They pleaded, didn't they? They did not raise it until the drafting of the pre-trial order, which followed the determination of the court on liability. It was allowed into the pre-trial order? Yes, it was. Even though it wasn't in the answer? That's correct. It did not come up as an issue at all in the trial on damages, and then Freddie Mac revisited that issue when they filed their opposition to our petition for attorney's fees. I guess an appeal would be good as to attorney's fees, even if it's late for everything else. That's correct. On the attorney's fees, was there any defense except the merger theory? No, they did not challenge the propriety of our fees. I don't recall anything else being appealed about them, like it was too much money or it was double counting or anything like that. No, there was none of those defenses. And I'd like to direct the panel's attention to Interpretive Record 9, in which on the issue of attorney's fees, the contract in this case specifically states under the dispute resolution clause that the remedies in this case expressly survive closing, and that's understood to mean survive closing and delivery of a deed. So it was in the card. Are you reading language there? I am. This is about a third of the way down the page. It says seller and buyer, including the licensees of each, if any, agree that all claims, controversies and disputes, including those for rescission, relating directly or indirectly to this transaction, shall be resolved in accordance with the procedure set forth herein, which shall expressly survive closing. Which in what? Which shall expressly survive closing. So rather than be merged into the deed, the parties have agreed that they shall survive closing. Let me back up two minutes. You said this paragraph 24 defense was not referred to in the original resolution of the underlying issues. What do you mean wasn't referred to? It's in the pretrial order. The pretrial order was not lodged until after summary judgment practice, which established Freddie Mac's liability to my clients. So it was not raised as a defense to liability, a contractual defense to liability in the summary judgment phase of this case. When was it raised? In the lodging of the pretrial order, which occurred, I think, in approximately November of 2002. I understand that. What happened after the pretrial order? Pretrial order, we proceeded to a trial on damages, damages only, and Freddie Mac did not raise the merger or revisit the merger issue again until they were challenging our award of attorney fees. And that's why I'm directing the Court's attention to the contractual language in which the parties agreed that it would, in fact, not be merged into the deed. That's an express written quote from the contract. I'm confused about something. How does an affirmative defense get into a pretrial order if it's not in the answer? I would have thought what you need to do is move to amend your answer and have a big fight about whether it's too late. Freddie Mac moved at the time the pretrial order was lodged to amend their answer to include that defense, and the Court allowed it. So they did move to amend the answer to assert the claim? Yes. Now, Freddie Mac's alternative argument is that we somehow stipulated that we were going to go to trial on the damages issue, and I think that that misstates the sequence of events. Somehow you were going to go to trial on the damages issue? Excuse me, on the attorney fee issue. The local rule is unambiguous and plain. In this district, entitlement to attorney fees is an issue that's raised by motion after the trial, unless it is a part of the merits recovery. And what happened at the lodging of the pretrial order was that the pretrial order becomes a substitute, as the panel is aware, for the pleadings in the case. We had alleged entitlement to attorney fees under the contract, and as in the process of the pretrial order substituting for the pleadings, we were simply repeating that in the pretrial order. That's not a stipulation or the equivalent in the Mendez-Mettles case, in the Sixth Circuit case referred to by counsel, of us agreeing that we are going to, in addition to our trial on damages, resolve the attorney fees in a trial setting at the time of seeking our other damages. It really doesn't make any sense because the contract provides for attorney fees to the prevailing party, and you would have a situation where both sides put on their attorney fee prayer and a decision is made, and half of that effort is a wasted effort because we don't know who the prevailing party is yet. So I don't agree that that was a stipulation that was made by the parties. The Budnick or Budinich, I'm not sure how you pronounce that decision, really does answer the question here. And the court in that case said that we don't look to the source of the attorney fee provision or even analyze the propriety of it because the courts need and the litigants need a bright-line test to determine whether or not attorney fees. We don't want to, on a case-by-case basis, determine whether or not attorneys are awardable based upon those facts, the source of the right to attorney fees, or any other factor. We're going to simply say that when there's a judgment entered, that that's going to be a final and appealable judgment, and the question of attorney fees is going to be resolved after the judgment, and in this case, as a supplemental judgment. The panel addressed the issue of the forms that were used. We used the forms that are provided in the Federal rules for this purpose, and the procedure has changed somewhat. And the Court on July 30th allowed our initial petition for attorney fees, our supplemental petition for attorney fees, our costs, and denied the motion of Freddie Mac to treat this as an amended judgment to avoid the effect of the running of the time for an appeal. We believe that that was not an abusive discretion on the part of the Court to deny that Rule 58C motion for the reason, if no other, that that motion itself was untimely. 58C, the Cabral case demonstrates, is not by itself a tolling provision. You don't file a Rule 58C motion, and that filing in itself tolls the time to appeal. You have to file that motion, and the Court has to enter an order on that motion within the 30 days after trial. So it's an alternative to filing a notice of appeal, not a substitute for it. In this case, Freddie Mac didn't do that either, and they're asking the Court to treat this as a motion to amend, even though their motion ab initio was untimely. Their final basis, excusable neglect or good cause, may be their best case, their best basis. However, that's not available to them because a mistake of law, misreading the Federal rules is not a basis for setting aside or for reinstating an appeal. For missing the timeline. And in this case, there's nothing ambiguous about the district's local rule. It says that attorney fee motion does not toll the time for an appeal. Morrow filed a petition for attorney fees on the basis of 54.4A. Freddie Mac objected to that petition on the basis of 54.4B and simply overlooked or ignored 54.4C. So the rule was in front of them at the time that they objected to our attorney fees. They could have filed a motion or filed a notice of appeal within that time, and they just chose not to do it. Do you have anything else that you'd like to tell us that's not in your briefs? Only if the Court has any questions concerning the underlying theory of liability and the Court's finding that Freddie Mac is liable to the morrows on the basis of breach of contract or misrepresentation. Any questions? Any questions? Can I point out one matter in closing, with your permission? And that is that Freddie Mac really is seeking to change Oregon law in this case. They want the as-is provision to be a silver bullet that basically invalidates a whole line of Oregon law concerning material misrepresentation, the ability of a general. We don't get to any of that if you're right on the lateness of the appeal, do we? That's correct. No, you do not. We have no questions. Thank you. You may respond. Your Honor, the Court directed a question to counsel as to whether or not Freddie Mac opposed the attorney fees on other grounds than paragraph 24. Yes, indeed, we did oppose the attorney fees on other grounds other than paragraph 24. With respect to the local rules that state that the time for filing an appeal should not be told, just because attorney fees are outstanding, that particular rule doesn't apply to this particular case because, again, the Court had not ruled on a merit issue in this particular case. And so, therefore, we do not believe that Rule 54 has any application whatsoever to this particular case. In the district court, did you try to amend the judgment so that you wouldn't have this problem? I'm sorry, Your Honor? In the district court, did you try to amend this judgment or anything so that you would not have this timeliness problem? No, we did not, Your Honor. What we did, we filed an opposition to the attorney fee motion. We asked the Court to construe that as an amendment to the judgment. And why did you do that? Because we were waiting for the Court to decide the merit issue as to whether or not paragraph 24 provided a complete bar or provided a defense to all of the morose claims for damages. Did you do it because you thought you knew you were in trouble on your timeliness of the appeal? We were concerned that the Court may construe that as being a final order. But, again, we took a position that because that merit issue had not been resolved by the Court, then the issue wasn't final. What ground did you advance in support of your request to construe it as a final judgment? The grounds that we advanced, Your Honor, was that the Court had scheduled those issues to be tried as part of the merits in the pretrial order. The parties anticipated that the Court would resolve that issue in that particular fashion. And so we were waiting for the Court to resolve it. When the Court finally made a ruling with respect to that, we determined that that ruling applied to all of our liability under the contract. All right. Thank you.
judges: Trott, Kleinfeld, Pollak